IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS HOSACK :
:
v. : Civil Action No. DKC 11-0420
:
UTOPIAN WIRELESS CORPORATION, :
et al. :

**MEMORANDUM OPINION**

Presently pending in this employment dispute is a motion to dismiss filed by Defendants. (ECF No. 8). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be granted.

**I. Background**

According to the complaint, Plaintiff Douglas Hosack is a former Executive and Associate with "one or more" of the corporate defendants in this case: Defendants Utopian Wireless Corporation ("Utopian"), RJGLaw LLC ("RJGLaw"), ITFS Spectrum Advisors LLC ("ISA"), and ITFS Spectrum Consultants LLC ("ISC").[1] (ECF No. 2 ¶ 10). This case concerns several problems that arose during Hosack's employment with the corporate defendants.

---

[1] The remaining defendant, Rudolph Geist, is the "Owner/Principal/CEO" of the corporate defendants. (ECF No. 2 ¶ 7).

First, Hosack alleges that Defendants failed to provide him with certain shares of stock as promised. As part of Hosack's compensation, Defendants allegedly agreed in a 2007 written agreement to transfer stock shares. (*Id.*). In particular, Defendants were to transfer 50,000 shares of Clearwire Corporation stock as soon as the shares became transferable to Hosack "without restriction." (*Id.*). Hosack alleges, on information and belief, that the stock shares became freely transferable on January 2008. (*Id.*). Nevertheless, Defendants did not transfer him all 40,000 shares; instead, he had received only 16,667 as the time the complaint was filed. (*Id.*). Had he received the remaining shares in January 2008, Hosack says he could have sold them at roughly $14 a share – generating returns of over $450,000. (*Id.*).

Second, Hosack asserts that his May 31, 2007 employment agreement contains an unenforceable non-compete clause. The agreement, which covered a "term" of 3 years, provided:

> . . . during the term and for 12 months thereafter, you agree that you shall not directly or indirectly have an ownership interest in, provide services for, or otherwise work as an executive officer, employee, director or business consultant for any company engaged in the pursuit of the acquisition of or provision of wireless broadband spectrum in any spectrum band, nor will you solicit any employees of Utopian to work for any such competitor or any other company involved in any other spectrum band.

(*Id.* ¶ 28). The restrictive covenant applied nationwide. (*Id.*). It also required Hosack to "agree to keep confidential all of Utopian's information" for the same period. (*Id.*).

Third, Hosack asserts that he did not receive his promised wages. Sometime in August 2010, Geist allegedly informed all employees – including Hosack – that Utopian was going to institute a 50% pay deferral retroactive to August 2010 in an effort to conserve cash. (*Id.* ¶ 11). Hosack states he was given two options: (1) full pay in August, followed by a layoff; or (2) acceptance of the salary deferral. (*Id.*). Hosack chose to accept the deferral. (*Id.*). Consequently, he did not receive half his salary in August and September 2010. (*Id.*).

Fourth, and finally, Hosack alleges that that he was terminated after he refused to submit false documentation to a federal agency. On November 2, 2010, Hosack states that he was appointed General Counsel and Secretary of the Board of Directors of Utopian. (*Id.* ¶ 12). Just one week later, Utopian needed to file certain certifications with the Rural Utility Service ("RUS") of the United States Department of Agriculture, pursuant to the Broadband Initiatives Program loan and grant program (which was part of the American Reinvestment and Recovery Act of 2009). (*Id.*). Geist purportedly told Hosack

3

that the appointment was made so that Hosack could execute the certifications that Utopian would submit to RUS. (*Id.*). He then demanded that Hosack sign certifications stating that the Utopian Board of Directors had taken certain actions that had not in fact been taken. (*Id.*). Hosack refused and Geist became hostile and threatening; Geist allegedly asked, "You think firing you is the worst thing I can do to you? Just wait you, mother f---r. Just you wait." (*Id.*). Geist then launched an eight-day "campaign of hostility and workplace ostracism" against Hosack that culminated in Geist firing him on November 18, 2010.

Hosack then filed a complaint against Defendants in the Circuit Court for Montgomery County on January 3, 2011. (ECF No. 1 ¶ 1). The complaint asserts four counts against all Defendants: breach of contract, violation of the Maryland Wage Payment and Collection Law, wrongful discharge, and a claim for a declaratory judgment that the restrictive covenant was invalid. Defendants, after accepting service on January 18, removed the case to this court on February 16, 2011. (ECF No. 1).

Defendants simultaneously filed a motion to dismiss and an answer on February 23, 2011. (ECF Nos. 8, 9). Hosack responded on March 18, 2011. (ECF No. 14). No reply was filed.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

Hosack states that his complaint should not be dismissed unless "it appears beyond doubt that Plaintiffs [sic] can prove no set of facts which would entitle him to relief." (ECF No. 14, at 2 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). He

5

argues that his complaint suffices "[u]nder this standard." The "no set of facts" standard upon which Hosack relies, however, was retired in *Bell Atlantic v. Twombly*, 550 U.S. 554, 562-63 (2007); *see also Francis*, 588 F.3d at 192 & n.1 (noting that the "no set of facts" standard was "explicitly overruled in *Twombly*"). Instead, the court applies a plausibility standard. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In addition to the complaint, the court may "consider any documents referred to in the complaint and relied upon to justify a cause of action – even if the documents are not attached as exhibits to the complaint." *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F.Supp.2d 678, 683 (D.Md. 2001); *accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994). Of particular relevance here, the court may consider such documents when they are attached to a defendant's motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *accord CACI Int'l, Inc. v. St. Paul Fire & Marine Ins.*

*Co.*, 566 F.3d 150, 154 (4th Cir. 2009). "When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail." *Fare Deals*, 180 F.Supp.2d at 683; *accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 664 (D.Md. 2009).

**III. Analysis**

Defendants seek to dismiss parts of counts one, two, and four and all of count three. Specifically, Defendants wish to dismiss (1) count one as to all defendants except ISA, (2) count two as to all defendants except ISA and Utopian, (3) count three in its entirety, and (4) count four as to all defendants except Utopian. Each is addressed in turn.

**A.  Count One: Breach of Contract**

Hosack first asserts a breach of contract claim, which stems from the alleged breach of an agreement under which he was to receive certain stock shares. Hosack originally brought this claim, like all his others, against all Defendants. As to all Defendants except ISA, however, the claim must be dismissed.

Under Maryland law, to establish breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant materially breached that obligation. *RRC Northeast, LLC v. BAA Maryland,*

*Inc.*, 413 Md. 638, 658 (2010). It follows then that generally "'a person cannot be held liable under a contract to which he was not a party.'" *Mowbray v. Zumot*, 533 F.Supp.2d 554, 564 (D.Md. 2008) (quoting *Snider Bros., Inc. v. Heft*, 271 Md. 409, 414 (1974)); *accord Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md.App. 294, 316 (1999).

Although the complaint might suggest that all Defendants were parties to the stock transfer agreement, the agreement itself – which Defendants attached to their motion to dismiss – says otherwise.[2] (*See generally* ECF No. 8-3). It is clear from the face of the agreement that the only relevant parties are Hosack and ISA. The only promises found in the agreement are made by ISA to Hosack. The only signatories to the agreement are Hosack and Geist as managing member of ISA. There are no other indications or any allegations suggesting any other parties took any actions with respect to the agreement.

Even though Geist signed the agreement, he is not a party to it. Geist signed as "Managing Member" of ISA. "It is now well-established that if an agent fully discloses the identity of his principal to a third party, then, absent agreement to the

---

[2] Hosack's opposition does not deny Defendants' contention that only ISA was a party to the agreement. Instead, he merely "defers to the court" on the issue of whether defendants other than ISA should be dismissed.

8

contrary, he is insulated from liability." *Mowbray*, 533 F.Supp.2d at 564 n.12 (quotation marks and brackets omitted); *accord Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 653 (1995). Nor would Geist's mere status as Managing Member of ISA subject him to liability. The complaint alleges that ISA is a Delaware limited liability company (ECF No. 2 ¶ 5); consequently, Delaware law defines his liability. *See* Md. Code Ann., Corps. & Ass'ns § 4a-1001. Delaware law provides that, unless the limited liability company's agreement says otherwise,

> . . . no member or manager of the limited liability company shall be obligated personally for any . . . debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

Del. Code Ann. tit. 6, § 18-303; *see also Thomas v. Hobbs*, No. C.A. 04C-02-010 RFS, 2005 WL 1653947, at *2 (Del.Super.Ct. Apr. 27, 2005) ("As with a corporation, a member of a limited liability company may not be held liable for the debts, obligations and liabilities of the company."). Therefore, only ISA could be liable for breach of the contract to transfer stock shares. This claim will be dismissed as to all other defendants.

**B. Count Two: Violation of Maryland Wage Payment and Collection Law**

In the second count of his complaint, Hosack alleges that Defendants denied him wages he was owed by (1) failing to pay him all of his salary in August and September 2010; and (2) failing to turn over the Clearwire corporation stock he was promised. Defendants contend that the complaint does not state a claim as to RJGLaw, ISC, or Geist. In response, Hosack merely "defer[s] to the court."

In Maryland, an employee may bring an action against his employer to recover unpaid wages pursuant under the Maryland Wage Payment and Collection Law. Md. Code Ann., Lab. & Empl. § 3-507.2(a). An employer is "any person who employs an individual in the State or a successor of the person." *Id.* § 3-501(b). A wage is "all compensation that is due to an employee for employment." *Id.* § 3-501(c)(1).

The complaint does not allege that Geist was Hosack's employer. To "employ" someone means "to engage an individual to work," which includes allowing an individual to work or instructing an individual to be present at a work site. *Id.* § 3-101(c). There is no indication that Geist "engaged" or otherwise employed Hosack here; indeed, the complaint states only that Hosack was "employed by one or more of the Corporate Defendants." (ECF No. 2 ¶¶ 2, 19). Geist is described by the

complaint as Hosack's "supervisor." (*Id.* ¶ 25). "The notion that a supervisor of an employee . . . is somehow responsible for the payment of wages to another employee whom he supervises is inconsistent with the plain language of the statute." *Watkins v. Brown*, 173 F.Supp.2d 409, 414-416 (D.Md. 2001) (interpreting the Maryland Wage Payment and Collection Law and concluding that the term "employer" would not encompass a "mere supervisor").

This count also does not succeed against RJGLaw and ISC. The only factual allegations in the complaint concerning the unpaid "wages" provide that Utopian failed to pay Hosack his complete salary and ISA failed to give him his promised Clearwire stock. (ECF No. ¶¶ 10, 11). There is no mention of any action taken – or not taken – by RJGLaw or ISC. The relevant agreements further buttress the notion that RJGLaw and ISC are not involved. The employment contract (which Defendants attached to their motion to dismiss) is signed by Hosack and Utopian alone. (ECF No. 8-2). As noted above, the agreement concerning the Clearwire shares was signed only by ISA and Hosack. (ECF No. 8-3). Thus, the RJGLaw and ISC do not owe Hosack anything.

The fact that Hosack conclusorily alleges that all the corporate defendants employed him is not enough. As has already

been explained, a complaint's unsupported allegation may be overcome on a motion to dismiss by relevant exhibits. Similarly, when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim. *See, e.g.*, *In re Livent Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 406 (S.D.N.Y. 2001) (listing cases).

This count will be dismissed as to RJGLaw, ISC, and Geist.

**C. Count Three: Wrongful Discharge**

Hosack also advances a wrongful discharge claim wherein he claims he was fired in violation of a public policy expressed in the American Recovery and Reinvestment Act of 1999 (the "ARRA"), Pub. L. No. 111-5, § 1553, 123 Stat. 115 (2009). "To state a claim for abusive [or wrongful] discharge, an employee must allege: (1) [he] was discharged, (2) [his] discharge violated a clear mandate of public policy, and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee." *Johnson v. MV Transp. Inc.*, 716 F.Supp.2d 410, 415 (D.Md. 2010); *accord Wholey v. Sears Roebuck*, 370 Md. 38, 50-51 (2002). Such a claim is "unavailable when the statute relied upon as the source of public policy provides its own remedial scheme for vindication of that policy." *Glynn v. EDO Corp.*, 536 F.Supp.2d 595, 615 (D.Md. 2008); *accord Wholey*, 370 Md. at 52-53.

The provision Hosack invokes bars retaliation against certain non-federal employees who disclose certain types of misconduct in connection with funds distributed under the ARRA. Employees may not be fired, demoted, or "otherwise discriminated against" if they disclose:

> (1) gross mismanagement of an agency contract or grant relating to [ARRA] funds; (2) a gross waste of [ARRA] funds; (3) a substantial and specific danger to public health or safety related to the implementation or use of [ARRA] funds; (4) an abuse of authority related to the implementation or use of [ARRA] funds; or (5) a violation of law, rule, or regulation to an agency contract (including the competition for or negotiation of a contract) or grant, awarded and issued relating to [ARRA] funds.

Pub. L. No. 111-5, § 1553(a). Put simply, Section 1553 provides protection to ARRA-related whistleblowers.

Section 1553, however, also provides its own remedial scheme. In particular, any person who believes he has "been subjected to a reprisal" is required to file a complaint with the appropriate inspector general. *Id.* § 1553(b)(1). The inspector general can then order relief or deny it; if the relief is denied, the employee may pursue a civil action in federal court. *Id.* §§ 1553(c)(2)-(3). There is evidently no time limit on filing a complaint.

13

In light of this remedial scheme, Hosack now concedes that his wrongful discharge claim was inappropriately brought. He therefore asks that count three be dismissed without prejudice. Because of the ARRA's remedial scheme, however, any subsequent attempt to renew this wrongful discharge claim would be futile. Instead, Hosack will need to bring a civil action in accordance with the requirements found in Section 1553. His wrongful discharge claim will be dismissed with prejudice.

   D.   **Count Four: Declaratory Judgment**

In his final count, Hosack seeks a declaratory judgment that the restrictive covenants imposed on him as part of his employment agreement are unenforceable. Both the Maryland Uniform Declaratory Judgments Act and the (Federal) Declaratory Judgment Act require a genuine, justiciable controversy for a declaratory judgment action to proceed. *See Brooks v. Cousins*, 527 F.2d 472, 473 (1975) ("[T]he parties must have adverse interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (quotation marks omitted)); *120 West Fayette Street, LLP v. Mayor & City Council of Baltimore City*, 413 Md. 309, 356 (2010) (stating that declaratory judgment action requires a justiciable controversy wherein "there are interested parties asserting adverse claims upon a state of facts which must have accrued"). As noted

14

above, the only apparent parties to the employment agreement were Hosack and Utopian. Those are the only apparent parties that have any rights under agreement, including the enforcement of the restrictive covenants. "As a general rule, a contract cannot be enforced by or against a person who is not a party to it."[3] *Cecilia Schwaber Trust Two. v. Hartford Accident & Indem. Co.*, 437 F.Supp.2d 485, 489 (D.Md. 2006). Thus, the defendants in this case that are not parties to the employment agreement are not "adverse" to Hosack in any sense, as they hold no interest in the agreement at all. *See* Black's Law Dictionary (9th ed. 2009) (defining adverse as "having an opposing or contrary interest, concern, or position"). Count four will be dismissed as to Defendants RJGLaw, ISA, ISC, and Geist.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[3] There are exceptions to the general rule, the most obvious being the right of a third party beneficiary to a contract to enforce it. There is no suggestion or allegation, however, that any of those exceptions are relevant here.